# K<small>ATZ</small>M<small>ELINGER</small>

370 L<small>EXINGTON</small> A<small>VENUE</small>, S<small>UITE</small> 1512
NEW YORK, NEW YORK 10017
www.katzmelinger.com

| | |
|---|---:|
| Adam Sackowitz | o: 212.460.0047 |
| Katz Melinger PLLC | f : 212.428.6811 |
| | ajsackowitz@katzmelinger.com |

April 14, 2022

**<u>Via ECF</u>**
Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   **Re:** *Rodriguez v. B R Restaurant Corp. et al.*
      **<u>Civil Action No. 22-cv-00771-BMC</u>**

Your Honor:

  We are attorneys for the parties in this matter, and we write jointly to seek approval of the parties' agreement to settle Plaintiff's claims, which include claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law ("NYLL"). The parties write to respectfully request that the Court approve the settlement agreement, a copy of which is submitted herewith, and allow the parties to discontinue the matter with prejudice pursuant to Fed. R. Civ. P. 41.

**<u>Plaintiff's Claims</u>**

  Plaintiff Francisco Rodriguez ("Plaintiff") asserts seven (7) causes of action against defendants B R Restaurant Corp. ("Bruno Ristorante"), Nicholas Crisci ("Crisci"), and Bruno Rinaldi ("Rinaldi") (collectively, "Defendants"). Plaintiff's claims arise from his employment with Defendants and include claims for overtime violations under the FLSA and NYLL and minimum wage violations, misappropriation of tips, untimely payment of wages, payroll notice violations, and wage statement violations under the NYLL.

  Plaintiff alleges that he worked for Defendants as a busser from in or around January 2016 until in or around September 2021. Plaintiff alleges that during his employment with Defendants, Plaintiff worked approximately fifty-five (55) to sixty (60) hours per week and was compensated at a fixed hourly rate of pay for all hours worked, including overtime hours. Plaintiff also alleges that his hourly rate fell below the New York statutory minimum wage for part of his employment term; that Defendants unlawfully distributed a portion of Plaintiff's tips to managerial employees during part of his employment; that Plaintiff was not timely paid all of his earned wages; and that

Plaintiff was not provided with wage statements or payroll notices in compliance with NYLL § 195(1) and (3).

Based on the allegations in the Complaint, Plaintiff alleges that he is owed approximately $118,814.00 in unpaid minimum wages, $28,812.00 in unpaid overtime wages, and $3,300.00 in misappropriated tips, for a total of $166,940.00. Plaintiff also alleges that he is entitled to liquidated damages equal to his unpaid wages and for Defendants' wage statement and payroll notice violations, as well as interest, costs, and reasonable attorneys' fees.

## Defendants' Position

- Plaintiff's Period of Employment

Defendants allege that Plaintiff worked for Defendants from August 21, 2017 until in or about September 2021, with breaks in employment, not continuously from January 2016 to September 2021, as Plaintiff alleges. Defendants produced what they purported to be new-hire documents and employee schedules regarding this position.

In addition, Defendants allege that Plaintiff left his employment dozens of times for days at a time and often did not work his full schedule each week. Moreover, Defendants allege that were closed for business during the Covid-19 Pandemic from approximately March 16, 2020 to May 7, 2020. Defendants allege that they then opened on a limited basis for take-out only and then on June 22, 2020 opened for outdoor dining only. Defendants allege that on or about July 13, 2020, Plaintiff was called back to work and was the last employee to be called back to work during the staged reopening process because of his routine tardiness and lack of work ethic. Defendants allege that eventually, from September 30, 2020 to December 10, 2020, Defendants were opened for 25% capacity indoor dining. From December 11-31, 2020, Defendants allege that they only operated as a take-out business and had no indoor or outdoor seating and Plaintiff only worked one (1) shift during that period. Defendants allege that they were again closed for business from on or about January 1, 2021 to February 12, 2021, at which time they opened at 25% capacity. Defendants allege that on March 19, Defendants reopened for 50% indoor service with limited capacity.

- Plaintiff's Hours Worked

Defendants allege that prior to the Covid-19 Pandemic, Plaintiff regularly worked five (5) days per week and that he generally worked three (3) night shifts per week and both a lunch and night shift on two (2) days per week. Defendants allege that in general, the lunch shift was from 12 p.m. to 4 p.m. (with employees generally arriving around 11:30 a.m.), and the night shift was from 4 p.m. to 9:30/10 p.m. Moreover, Defendants allege that a "family meal" was served for employees from 4 p.m. to 5 p.m. during which time they took a break. Defendants allege that Plaintiff routinely showed up late for his shift and/or did not work all of the days he was scheduled to work each week. Defendants allege that on limited occasions during the busy periods, Plaintiff worked a sixth day each week.

As noted above, Defendants allege that Plaintiff did not work from March 16, 2020 until on or about July 13, 2020. Defendants allege that upon his return through December 11, 2020, and then again from February 12, 2021 to until July 1, 2021, Plaintiff generally worked two (2) or three (3) days per week during the night shift only. Defendants allege that during that time the Restaurant was opened for limited hours (12 p.m. to 8 p.m. when open for take-out only or 12 to 9/10 p.m. when open for dining services due to the New York City curfew).

Eventually, on July 1, 2021, after Defendants reopened their service to 100% capacity, Defendants allege that Plaintiff generally worked the same schedule as prior to the Covid-19 pandemic.

- <u>Defendants Properly Paid Plaintiff</u>

Defendants allege that Plaintiff was paid minimum wage and overtime less a tip credit. For example, Defendants allege that when Plaintiff worked a single night shift (which was a maximum of 6 hours less breaks), he was paid $60 plus tips although he did not necessarily work the entire shift (i.e. $15/hour less $5 tip credit multiplied by a guarantee of 6 hours). Defendants allege that when Plaintiff worked a double-shift, he was paid additional monies. However, Defendants allege that Plaintiff did not regularly work any overtime, but when his total weekly hours exceeded forty (40) hours, he was paid at the appropriate overtime rate less a tip credit (i.e. $22.50 less $5 tip credit). Eventually, Defendants allege that they took less of a tip credit from Plaintiff's wages (e.g. $15 per hour less $2.50 tip credit for a 6 hour night shift totaling $75 plus tips).

- <u>Plaintiff's Claims are Barred Based on His Breach of Duty of Loyalty/Violation of the Faithless Servant Doctrine</u>

Defendants allege that Plaintiff abandoned his job by walking out of work. Thereafter, Defendants allege that Defendants were made aware of Plaintiff's "black market" business of selling goods (e.g. playstations, a crib, airpods, etc.) to other employees during his work hours. Defendants allege that such conduct gives rise to a claim for breach of the duty of loyalty/violation of the faithless servant doctrine. Accordingly, had the case not settled, Defendants would have filed a separate action in New York State Supreme Court against Plaintiff. Had Plaintiff been found to have breached his duty of loyalty/violated the faithless servant doctrine, not only would he have forfeited his FLSA/NYLL claims, but would have been required to disgorge any wages he earned from Defendants during the period of his faithlessness. See <u>Art Capital Group, LLC v. Rose</u>, 2017 N.Y. App. Div. LEXIS 2670 (N.Y. App. Div. 1st Dep't Apr. 6, 2017) (citations omitted) (New York's strict application of the faithless servant doctrine "mandates the forfeiture of all compensation . . . where . . . one who owes a duty of fidelity to a principal is faithless in the performance of his services"); <u>Samba Enters., LLC v. iMesh, Inc.</u>, No. 06-CIV.-7660 (DC), 2009 WL 705537, at *9 (S.D.N.Y. Mar. 19, 2009)(an employee who is deemed a faithless servant must disgorge any compensation provided during his employment).

Defendants produced evidence (i.e. redacted witness statements and photographs) that they purport demonstrate Plaintiff's liability under the faithless servant doctrine. Since such production, Defendants allege that Plaintiff has texted one of Defendants' witnesses about the legal

ramifications of defamation, seemingly seeking to chill any witness participation in a potential faithless servant action. It is also believed that Plaintiff (or an agent of Plaintiff), texted Defendant Rinaldi that another employee (that Plaintiff believed to have come forward as a whistleblower) was stealing. In the event that this litigation continued, Defendants were also contemplating filing a motion regarding witness tampering.

- Plaintiff's Tip Misappropriation Claim Would Have Been Subject to Dismissal

Prior to settlement, Defendants were in the process of filing a motion to dismiss Plaintiff's tip misappropriation claim. Specifically, Defendants allege that Plaintiff failed to adequately plead his Fourth Cause of Action for misappropriation of tips pursuant to the NYLL. Defendants allege that Plaintiff set forth the conclusory allegations that Defendants unlawfully retained a portion of his tips without any specificity or supporting details. Defendants allege that the dearth of any facts as to the basis for the tip-related claim is telling.

Moreover, Defendants maintain that Plaintiff couched this cause of action as an unlawful deduction claim pursuant to NYLL § 193. To state a claim under section 193, a plaintiff must allege a specific deduction, because a "wholesale withholding of payment is not a 'deduction' within the meaning of Labor Law § 193." Perella Weinberg Partners LLC v Kramer, 153 AD3d 443, 449 (1st Dept 2017). A cause of action under § 193 exists where an employer failed to pay a specific, non-discretionary, portion of the employee's wages, such as a bonus or specifically bargained-for additional compensation. See Ryan v. Kellogg Partners Institutional Servs., 945 N.Y.S.2d 593 (2012) (employer's failure to pay a non-discretionary bonus was found to be a violation of Labor Law § 193); Lord v Marilyn Model Mgt., Inc., 173 A.D.3d 606 (1st Dept 2019)(severance pay may be recovered as unpaid wages under Labor Law Article 6); Wachter v Kim, 82 AD3d 658 (1st Dept 2011)(compensation that was a "sum certain" that defendant was required to pay without discretion, constituted wages, the nonpayment of which gave rise to a claim under Labor Law § 193). In the instant matter, Defendants allege that Plaintiff does not allege any facts supporting a claim that Defendants unlawfully deducted his wages. Thus, to the extent Plaintiff claims unlawful deductions from wages, the claim is subject to dismissal. See De Los Santos v. Hat Trick Pizza, Inc. (In re Domino's Pizza Inc.), 2018 U.S. Dist. LEXIS 51393, *13-19 (S.D.N.Y. Mar. 27, 2018)(dismissing NYLL 193 claim where plaintiffs alleged that defendants unlawfully retained portions of gratuities owed to plaintiffs, not that defendants made unlawful deductions from wages). Notwithstanding, Defendants deny that any of Plaintiff's tips were misappropriated to managers (and also deny he worked the entire period of June to December 2020 as he alleges).[1]

- Plaintiff's Claim for Failure to Timely Pay Wages Was Subject to Dismissal

Defendants were also planning on moving to dismiss the Fifth Cause of Action for failure to timely wages pursuant to NYLL §191. The statute requires, workers to be paid within certain timeframes after the wages are earned. NYLL § 191 pertains to prompt payment requirements and

---

[1] Defendants also deny that they did not keep records of Plaintiff's tips. Plaintiff even informally produced a daily tip distribution log sample that he photographed.

is not "the correct vehicle for collecting allegedly unpaid overtime wages." Fearon-Gallimore v Gottlieb, 2017 NY Slip Op 32822[U] (Sup Ct, NY County 2017) quoting Perez-White v Advanced Dermatology of N.Y. P.C., 2016 WL 4681221, *11, 2016 U.S. Dist. LEXIS 120642, *29 (SD NY 2016); see also Niyazov v Park Fragrance, LLC, 2014 NY Slip Op 30610[U], *7 (Sup Ct, NY County 2014) (dismissing plaintiff's claims under Labor Law § 191 because plaintiff alleged that he was not paid the correct amount "in September and October 2009, not that he was not otherwise paid on time . . . "); Jara v. Strong Steel Door, Inc., 2008 NY Slip Op 51733U (N.Y. Sup. Ct. 2008) (dismissing NYLL §191 claim it was not disputed that plaintiffs were timely paid on a regular basis and the gravamen of the complaint was that the sums paid were not equal to what the plaintiffs claimed they were entitled to receive); Wysocki v. Kel-Tech Construction, Inc., Sup. Ct, NY Co., Index No. 603591/03, April 8, 2005, Solomon, J., aff'd on other grounds, 33 AD3d 375, 822 (1st Dep't. 2006) (dismissing claim under §191 for an alleged failure to timely pay wages and noting that the dispute was over the amount to be paid and not whether it was paid periodically).

Here, Defendants allege that the allegations fall within the purview of the precedent requiring dismissal of the claim. Specifically, Plaintiff claims that Defendants routinely failed to pay him all of his earned wages on a weekly basis and not later than seven (7) calendar days after the end of the week in which the wages were earned. Defendants allege that such a claim is inappropriately piggy-backed on Plaintiff's unpaid wage claims because Plaintiff is not alleging that the wages he was paid were not paid on time; he is merely alleging that the "wholesale" amount of wages he claims are owed were not paid in a timely fashion. Therefore, Defendants allege that the fifth cause of action would have been dismissed if the case was not settled.

### The Parties' Resolution

On April 1, 2022, the parties reached an agreement in principle to settle this matter. In exchange for mutual releases and other consideration set forth in the parties' settlement agreement, Defendants agreed to pay Plaintiff the total sum of $45,000.00 over a three-month period following the Court's approval of the parties' settlement agreement. The amount agreed upon reflects a mutual desire to reach an amicable resolution of this matter and avoid the risks and costs that additional litigation presents to the Parties. Plaintiff recognizes that continued litigation may result in an award that is less favorable to him than the current settlement, particularly in light of the lawsuit that Defendants intended to file against Plaintiff in Queens County Supreme Court for Plaintiff's alleged violations of the faithless servant doctrine. If successful, Defendants' state court lawsuit may have impacted Plaintiff's damages in this action and subjected Plaintiff to liability for any wages paid to Plaintiff during the latter portion of his employment. Defendants similarly seek to avoid the significant costs associated with the continued defense of this matter through trial, and also any fees and costs associated with their anticipated state court action against Plaintiff.

As explained in further detail below, the parties respectfully aver that the proposed settlement agreement is fair, reasonable, and equitable.

## **The Proposed Settlement Should Be Approved**

1. <u>The settlement amount is fair and reasonable</u>

The parties' proposed settlement agreement warrants approval as it is fair, reasonable, and equitable. Indeed, the agreement reflects a reasonable compromise of Plaintiff's FLSA and NYLL claims rather than a mere waiver of statutory rights brought about by Defendants' overreaching. Here, there is no doubt that the settlement did not come about because of "overreaching" by Defendants. To the contrary, Plaintiff is represented by competent counsel and the settlement amount, $45,000.00, results in a recovery to Plaintiff, after expenses and proposed attorneys' fees, of $31,000.00. This sum is fair and reasonable given the early stage at which the settlement was reached; the time and expense associated with continued ligation; the risk that Plaintiff would not prevail on all of his claims after a trial; the risk that Plaintiff would not be able to collect on a judgment even if Plaintiff prevailed at trial; the risk that Defendants' faithless servant claims would reduce or eliminate Plaintiff's potential recovery; and the fact that the entire settlement amount will be paid to Plaintiff shortly after the Court's approval of the settlement agreement.

2. <u>The settlement agreement was the result of arm's length negotiations by the parties</u>

The proposed settlement is also the product of negotiation between represented parties following extensive settlement discussions. Plaintiff and Defendants hold opposing views on the merit and value of Plaintiff's claims; however, the arm's length bargaining between the represented parties, along with the information exchanged prior to and during settlement negotiations, weighs in favor of finding the settlement reasonable. Moreover, nothing in the record before the Court indicates that the proposed settlement has been achieved through fraudulent or collusive conduct. Through informal discovery and candid discussions between counsel, the parties can assess the strengths and weaknesses of the asserted claims and their respective positions. *See, e.g.*, *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) ("In considering whether a settlement is fair and reasonable, the principal question is whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching'") (citation and internal quotation marks omitted); *Aponte v. Comprehensive Health Mgmt., Inc.,* 2013 U.S. Dist. LEXIS 47637, at *12 (S.D.N.Y. Apr. 2, 2013) (courts typically "regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement") (citation and internal quotation marks omitted). Furthermore, since Plaintiff is no longer employed by Defendants, coercion is unlikely. *See, e.g.*, *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *Cisneros v. Schnipper Rest. LLC,* 2014 U.S. Dist. LEXIS 2111, at *2-3 (S.D.N.Y. Jan. 8, 2014) ("Although the FLSA places strict limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver, these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here") (citation and internal quotation marks omitted).

Additionally, after weighing the factors, the settlement should be allowed to proceed, as: (i) Plaintiff's alleged injuries will not recur as Plaintiff is no longer employed by Defendants; (ii) Defendants explicitly deny any wrongdoing; and (iii) continuing to develop the record will only

serve to enlarge costs on both sides and will not serve any useful purpose. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d at 335-36.

    3.  <u>The release and non-disparagement provisions are appropriate under the circumstances</u>

The proposed settlement agreement contains mutual general releases of the parties to this action. While broad releases are generally disfavored in FLSA settlements, courts in this circuit have approved such releases where the releases are mutual; the settlement resulted from arm's length negotiations involving experienced counsel; the settlement binds only the named plaintiffs; and there is no ongoing relationship between the defendants and plaintiffs. *Zhu v. Meo Japanese Grill & Sushi, Inc.*, 2021 WL 4592530, at *4 (E.D.N.Y. Oct. 6, 2021); *see also Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 2016 WL 922223 (S.D.N.Y. Feb. 3, 2016); *Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015).

Some courts have nevertheless rejected mutual general releases in FLSA settlements where the general release, "while mutual in form, appears one-sided as a matter of economic substance" where it lacks a clear benefit to the plaintiff. *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 229 (S.D.N.Y. 2016). However, no such concern exists here, as the benefit of Defendants' broad release is evident given Defendants' allegations and threat to file a state court action against Plaintiff under the faithless servant doctrine. Thus, the mutual general releases in the proposed settlement agreement are beneficial to both sides as they serve to fully and finally sever the ties between hostile parties asserting claims against one another.

Non-disparagement clauses in FLSA settlement agreements are also disfavored, although such provisions are routinely approved where they contain carve-outs for truthful statements about the plaintiff's experience litigating the case. *See Lazaro-Garcia v. Sengupta Food Services, et al.*, 2015 WL 9162701, at *3 (S.D.N.Y. Dec. 15, 2015); *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 180 n. 65 (S.D.N.Y. 2015); *Zhu v. Meo Japanese Grill & Sushi, Inc.*, 2021 WL 4592530, at *5 (E.D.N.Y. Oct. 6, 2021). The non-disparagement provision in the proposed settlement agreement is mutual and contains such a carve-out, permitting the parties "to make truthful statements to third-parties, including governmental agencies, about their employment relationship and litigating the Action", and therefore should be approved.

    4.  <u>Plaintiff's counsels' fees are reasonable</u>

Lastly, the parties agree that the settlement amount is a reasonable compromise of all parties' positions, and the proposed amount of attorneys' fees is also fair and reasonable as Plaintiff's counsel's own compensation does not adversely affect the extent of the relief obtained by counsel on behalf of Plaintiff. *See Wolinsky,* 900 F. Supp. 2d at 336-37; *Cisek v Natl. Surface Cleaning, Inc.*, 954 F. Supp. 110, 111 (S.D.N.Y. 1997) (finding that the sum sought by plaintiffs' counsel was reasonable, the settlement was untainted by conflict of interest and there was "no reason to conclude that plaintiffs' counsel benefited at the expense of their clients"). Thus, the settlement does not favor Plaintiff's counsel over Plaintiff.

Under the proposed agreement, Plaintiff's counsel would recover $741.00 as reimbursement for costs and expenses[2] and $13,259.00 in fees. Under Plaintiff's contingency fee agreement, Plaintiff's counsel is entitled to recover, out of Plaintiff's settlement amount, fees totaling one-third of any amounts recovered on behalf of Plaintiff after reimbursement of costs and expenses. However, Plaintiff and Plaintiff's counsel agreed to modify their contingency agreement in order to cap Plaintiff's counsel's share of the settlement at $14,000.00, which is less than one-third of the amount owed under the settlement agreement. This fee should be approved, as "[a]n award of one third of the fund is consistent with what reasonable, paying clients pay in contingency employment cases." *Flores v. Anjost Corp.,* 2014 U.S. Dist. LEXIS 11026, at *25 (S.D.N.Y. Jan. 28, 2014); *see also Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to plaintiff's retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs. This fee arrangement is routinely approved by courts in this Circuit."). The proposed fee award of one-third should also be approved because it was consensual and agreed to by Plaintiff. *See Mireku v. Red Vision Sys., Inc.,* 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (approving settlement and noting the consensual nature of the fee arrangement).

As indicated by Plaintiff's counsel's time records, attached hereto as **Exhibit A**, Plaintiff's counsel has spent a total of 42.20 hours on this matter as follows: Adam Sackowitz, 21.10 hours; Nicola Ciliotta, 2.60 hours, and Eliseo Cabrera, 18.50 hours. Plaintiff's counsels' hourly rates $375.00, $285.00, and $325.00 respectively, are reasonable based on Plaintiff's counsels' experience and are in line with the rates charged by attorneys in this district. *See Vega v. K & C Interior Constr. Corp.*, 2018 WL 4376486, at *7 (E.D.N.Y. Aug. 28, 2018), *report and recommendation adopted*, 2018 WL 4374911 (E.D.N.Y. Sept. 13, 2018) (noting that courts in the EDNY have awarded hourly rates up to $200 for recent graduates, $300 for associates, and $450 for partners) (citations omitted).

Mr. Sackowitz was admitted to the Bars of the states of California in 2014, New York in 2015, and New Jersey in 2016, and has focused his practice on employment law for seven years. Mr. Sackowitz earned his B.S. from Cornell University in 2009 and his J.D. from the University of California at Los Angeles School of Law in 2014.

Mr. Ciliotta earned his B.A. from Vanderbilt University in 2015 and his J.D. from Penn State Law School in 2018. Mr. Ciliotta was admitted to practice in New York in 2019 and in New Jersey in 2021. Mr. Ciliotta joined Katz Melinger PLLC in 2018 and focused his practice on all aspects of employment litigation, with a particular focus on wage and hour cases, until he left the firm in November 2021.

Mr. Cabrera earned his B.A from University of California, Berkeley and his J.D. from City University of New York School of Law in 2015. Mr. Cabrera has focused his practice on employment law since May 2019 and has been a member in good standing of the New York Bar since 2017.

---

[2] Plaintiff's costs and expenses are as follows: $402.00 for the initial filing fee, and $339.00 for service of process costs.

Honorable Brian M. Cogan<br>
April 14, 2022<br>
Page 9

The $13,259.00 fee sought by Plaintiff's counsel is below Plaintiff's counsel's "lodestar" amount of $14,666.00 and is therefore reasonable. As set forth herein, Plaintiff's counsel negotiated a favorable settlement for Plaintiff at an early stage of the lawsuit. Additionally, as part of the settlement agreement reached by the parties, Defendants agreed to deliver the settlement payment to Plaintiff in three (3) payments over a three-month span, shortly after the Court's approval of this agreement. Moreover, by reaching a settlement with Defendants, Plaintiff avoids the risk of either receiving an unfavorable outcome in this matter or, if Plaintiff prevails on his claims, attempting to enforce a judgment against Defendants.

Accordingly, the parties respectfully request judicial approval of the parties' proposed settlement agreement, and further request permission to submit a stipulation of dismissal with prejudice consistent with the requirements of Fed. R. Civ. P. 41(a)(2).

Respectfully submitted,

| | |
|---|---|
| Dated: April 14, 2022 | Dated: April 14, 2022 |
| | |
| */s/ Adam Sackowitz* | */s/ Matthew A. Brown* |
| Adam Sackowitz | Matthew A. Brown, Esq |
| Katz Melinger PLLC | Milman Labuda Law Group PLLC |
| 370 Lexington Avenue, Suite 1512 | 3000 Marcus Avenue, Ste. 3W8 |
| New York, New York 10017 | Lake Success, New York 11042 |
| T: (212) 460-0047 | T: (516) 303-1366 |
| ajsackowitz@katzmelinger.com | matt@mllaborlaw.com |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |